TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
WILLIAM KANELLIS (Cal. Bar No. pending)
Assistant United States Attorney
Domestic Security and Immigration Crimes Section
1200 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-4697
E-mail: william.kanellis@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BENJAMIN AZARIAH SOUTHWORTH,<br><br>Defendant. | Case No. 2:26-cr-00570-WLH<br><br>GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT BENJAMIN AZARIAH SOUTHWORTH'S APPLICATION FOR RECONSIDERATION OF DETENTION ORDER<br><br>Indictment: 09/02/2026<br>Pretrial Conference: 10/16/2026<br>Trial Date: 10/26/2026 |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Stephen Chang, hereby files its opposition to defendant BENJAMIN AZARIAH SOUTHWORTH's Application for Reconsideration of the Detention Order.

//

//

//

//

This opposition is based on the attached memorandum of points and authorities, the Indictment, the Pretrial Services Report (but not its recommendation), Exhibits 1, 2 and 3 (which were lodged with the magistrate judge prior to the detention hearing), and such further evidence and argument as the Court may permit.

DATED: September 15, 2026

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney & Chief, Criminal Division

/s/
WILLIAM KANELLIS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant BENJAMIN AZARIAH SOUTHWORTH should be detained pending trial. He presents a danger to the community and, by virtue of the gravity of the charges against him, a flight risk. SOUTHWORTH threatened to kill the President of the United States more than once. He admitted that he had been "vocal in calling for the execution of Donald Trump." After hearing evidence of the acts underlying the indictment, the Honorable Diana M. Kwok, United States Magistrate Judge, ordered SOUTHWORTH detained on danger grounds. For the reasons articulated below, the Bail Reform Act of 1984 requires that he remain detained pending trial.

## II. STATEMENT OF FACTS

### A. Offense Conduct

During the first five months of 2026, SOUTHWORTH, acting through social media posts and interstate telephone calls, engaged in a campaign to (1) threaten the President, and (2) threaten, intimidate and harass family members of one of the President's lawyers.

Count One of the Indictment charges threats against the President, and describes his April 7, 2026 declaration on Instagram that, "[i]t's time for course correction, kill Donald Trump."

Count Two charges cyberstalking for threatening telephone calls and internet posts and videos made from January 8, 2026, to May 12, 2026, to members of the President's lawyer's family, including calling into a radio station run by on family member to give the impression that someone was lying in wait on the street outside its premises: "you better hide motherfucker. I am on Mallory Lane."

Count Three relates to repeat, anonymous telephone messages left on or about February 13, and 14, 2026, for the wife of the son of the President's lawyer.

**B. SOUTHWORTH's Detention Hearing**

Defendant was arrested and made his initial appearance before the Honorable Diana M. Kwok, United States Magistrate Judge, on September 3, 2025. At his detention hearing, the government sought detention primarily on the basis of SOUTHWORTH's danger to the community. Pretrial Services did not recommend detention. After hearing argument, Judge Kwok ordered defendant permanently detained on the grounds that no condition or combination of conditions would reasonably assure the safety of any person or the community.

## III. ARGUMENT

**A. The Government Is Entitled To A Detention Hearing**

Section 3142(f)(1)(A) of Title 18 provides, in relevant part, that the Court will hold a detention hearing, "upon motion of the attorney for the Government, in a case that involves — (A) a crime of violence[.]" Under the Bail Reform Act, "the term 'crime of violence' means— (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 3156(a)(4)(A); see, e.g., United States v. Nguyen, 2024 WL 4584574, at *5 (N.D. Cal. Oct. 25, 2024).

Courts across the country have uniformly held that threats against a person constitute a crime of violence. In United States v. De La Fuente, the Ninth Circuit addressed whether mailing a threat to injure another person under section 876(c) of Title 18 amounted to a crime of violence by surveying the circuits who had addressed the

issue. In doing so, it specifically referenced the extant threat statute, section 871 of Title 18:

> The Fourth and Eighth Circuits have concluded that mailing threatening communications is a crime of violence. *United States v. Weddle,* 30 F.3d 532, 538 n. 1 (4th Cir.1994); *United States v. Left Hand Bull,* 901 F.2d 647, 649 (8th Cir.1990). The First and Seventh Circuits have similarly held that mailing threats directed against the President, 18 U.S.C. § 871, is crime of violence. *United States v. Santos,* 131 F.3d 16, 21 (1st Cir.1997); *United States v. McCaleb,* 908 F.2d 176, 178 (7th Cir.1990). *No appellate court appears to have reached a contrary conclusion.*

353 F.3d 766, 771 n.3 (9th Cir. 2003)(emphasis supplied). These decisions align with other jurisprudence recognizing that, even absent an imminent corporal injury, the nature and purpose of threats qualify them as violent crimes. See also United States v. Wagner, 2026 WL 2333589, at *7 (6th Cir. Aug. 12, 2026) ("Internet-based threats like those Wagner is charged with making pose well-documented harms.") United States v. Wheeler, 776 F.3d 736, 745 n.4 (10th Cir. 2015); Elonis v. United States, 575 U.S. 723, 747-48 (2015) (Alito, J., concurring in part and dissenting in part); United States v. Weddle, 30 F.3d 532, 538 n. 1 (4th Cir.1994); United States v. Left Hand Bull, 901 F.2d 647, 649 (8th Cir.1990).

In this case, SOUTHWORTH threatened to kill the President and solicited others to kill the President: Among other things, as early as January 2025, he privately told a friend that, "if I could Kill him, I wouldn't waste the opportunity." Indictment ¶ 12. In late March 2026, he said in a public social media post, "Kill Donald Trump. Kill that motherfucking pedophile in the White House. Kill that traitor of the United States Constitution." Id. ¶ 14. On April

7, 2026, he said, "It's time for course correction. Kill Donald Trump." Id., Count 1. In that same post, SOUTHWORTH acknowledged that he was "calling for Donald Trump to be killed," and that he had, "been vocal in calling for the execution of Donald Trump." Id.

These threats fall wholly within the ambit of section 871 of Title 18, which proscribes a "threat to take the life of . . . or to inflict bodily harm upon the President of the United States." And plainly, section 871 "has as an element of the . . . threatened use of physical force against the person or property of another." 18 U.S.C. § 3156(a)(4)(A). A detention hearing is warranted for this reason alone. The same logic applies to the threats and harassment underlying Counts Two and Three of the Indictment.

**B. SOUTHWORTH's Conduct Creates a Rebuttable Presumption**

SOUTHWORTH's commission of a crime of violence creates "a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(e). See United States v. Salerno, 481 U.S. 739, 750 (1987) ("The act operates only on individuals who have been arrested for a specific category of extremely serious offenses. . . . Congress specifically found that these individuals are far more likely to be responsible for dangerous acts in the community after arrest.") (citation omitted); S. Rep. No. 98-225, p. 6-7 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3189 (justifying the presumption of dangerousness in 18 U.S.C. § 3142(f)(1). "When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community ... a court may disable the arrestee from executing that threat." Salerno, 481 U.S. at 751.

**C. Legal Standard for Detention**

The Bail Reform Act of 1984 requires "detention of the person before trial" without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). This Circuit has long recognized that detention is appropriate where a defendant is either a flight risk or a danger to the community; it is not necessary to prove both. United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985). So, for example, the Ninth Circuit recently affirmed a district court's detention order predicated solely upon the finding that the defendant presented a danger to the community. United States v. Watson, 2025 WL 1793841, at *1 (9th Cir. Feb. 19, 2025).

Normally, "the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community." United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991) (citation omitted). The district court conducts its own de novo review of a magistrate judge's detention order. United States v. Koenig, 912 F.2d 1190, 1191 (9th Cir. 1990) (discussing § 3145(b)).

**D. Defendant Should Be Detained Pending Trial**

Irrefutable evidence shows that SOUTHWORTH poses a serious risk of danger to the community and to specific persons. He has publicly called for the execution of the President. He has printed and sold from his website ephemera stating "Kill Trump." These ephemera have been posted on the internet and in public spaces. Ex. 1, 3. See United States v. Lincoln, 403 F.3d 703, 707 (9th Cir. 2005)("'wanted'

posters [] publicly posted on the internet [] could be reasonably interpreted as a signal to unknown third parties to target those who appeared on the posters.”); Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists, 290 F.3d 1058, 1071 (9th Cir. 2002)(en banc))

Apart from his calls to kill the President, SOUTHWORTH has threatened family members of one of the President’s lawyers by leading them to believe that he was lying in wait, outside their business, causing the business to go into lockdown and causing these family members to fear for their safety. He has barraged these same family members with anonymous, threatening telephone calls, because, he admitted, he wanted them to feel “fear.” His threats were so serious and persistent that two Federal law enforcement agencies opened investigations, and state law enforcement officials were deployed to supply protection for the victims.

Moreover, it appears that SOUTHWORTH remains committed to continuing these threats. The Government has recently received information which suggests that SOUTHWORTH, using a different internet pseudonym (“jazzisdead11”), has continued to harass and threaten the same victims. See Ex. 2. The Government has not yet definitively ascertained that these new threats emerge from SOUTHWORTH himself, but the language and substance of these threatening messages bear SOUTHWORTH’s imprimatur.

That SOUTHWORTH can continue these threats while sitting at home militates in favor of detention until trial. Unlike situations where dangers to the community arise from corporal threats, the nature of the crimes charged in the Indictment allow SOUTHWORTH to continue his campaign of fear and harassment while sitting at home on his

computer. Detention is warranted here because, "[u]nder section 871, the threat itself is the crime." United States v. Mitchell, 812 F.2d 1250, 1255-56 (9th Cir. 1987) (upholding § 871 conviction of a defendant with no capacity to carry out the threat).

The typical prophylactic measures employed before trial – e.g., home detention, an unsecured appearance bond, and ankle monitoring – would not ameliorate these risks. Even if the Court set bail conditions for SOUTHWORTH's pretrial release, those limitations – such as restrictions on internet usage – would suffer from a "critical flaw" in that "they depend on [defendant]'s good faith compliance" in order to be effective. United States v. Hir, 517 F.3d 1081, 1092 (9th Cir. 2008). Given the relentless nature of SOUTHWORTH's conduct, an appearance bond would be inadequate to serve as a deterrent for future criminal conduct. See Rep. No. 225, 98th Congress, 1st Sess. 1983, 1984 U.S.C.A.N. 3182, 3198-99 (n.60) (Congress finding that "a defendant who is a danger to the community remains dangerous even if he has posted a substantial money bond").

**IV. CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court order defendant detained pending trial.