TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
WILLIAM KANELLIS (Cal. Bar No. pending)
Assistant United States Attorney
Domestic Security and Immigration Crimes Section
1200 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-4697
E-mail: william.kanellis@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BENJAMIN AZARIAH SOUTHWORTH,<br><br>Defendant. | Case No. 2:26-cr-00570-WLH<br><br><u>GOVERNMENT'S MEMORANDUM PRESENTING NEW INFORMATION IN SUPPORT OF DETENTION FOR DEFENDANT BENJAMIN AZARIAH SOUTHWORTH</u><br><br>Indictment: 09/02/2026<br>Pretrial Conference: 10/16/2026<br>Trial Date: 10/26/2026 |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney William Kanellis, hereby files this memorandum to advise the Court of new information relating to the bond request by defendant BENJAMIN AZARIAH SOUTHWORTH (Dkt. No. 20). This memorandum is based upon new information received by federal law enforcement agents after defendant's September 15, 2026, detention hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

# I. INTRODUCTION

In the late afternoon of September 15, 2026, federal agents in this case received information that defendant, while in custody at the Metropolitan Detention Center in Los Angeles (MDC-LA) for the past two weeks, communicated to other inmates that once he is released on bond in this case, he will carry out and/or incite others to carry out attacks against the President of the United States and J.S., who has acted as the President's personal attorney. Defendant specifically stated that he could personally carry out these attacks on J.S. because he knows where J.S. and his family live. Because of this grave, imminent danger, the government respectfully requests that the Court reaffirm its prior order instructing that defendant be detained pending trial.

# II. ARGUMENT

## A. New Evidence that Defendant Poses a Danger to the Community

### 1. Defendant's Continued Threats While Incarcerated

In the late afternoon of September 15, 2026, case agents in this matter were alerted that an inmate housed at MDC-LA had reported to a prison official that defendant has made additional threats of violence against the President and the President's former attorney (with whom defendant was once personally familiar) while in custody.

On September 16, 2026, federal agents interviewed the reporting inmate at MDC-LA. The agents read the inmate his/her Miranda rights and he/she consented to the interview. See Exhibit A, Affidavit of Special Agent Michael Dickey at ¶4.

The inmate told agents that he/she had had conversations with defendant wherein defendant described himself as a "political prisoner," and said he wanted to "burn them down." Id., ¶5. Defendant discussed wanting to put fear into J.S., who the inmate identified as President Trump's attorney. According to the inmate, defendant said of J.S.: "His ties to Trump makes him unworthy of living on Earth," and "I want to burn their system down." Id., ¶6.

Further, the reporting inmate stated that defendant discussed inciting others on social media to use Molotov cocktails to attack President Trump's motorcade. Id., ¶6. Defendant said that Molotov cocktails are "easy to come by," and relayed that he had read The Anarchist Cookbook, and would carry out the attacks himself if he were not in custody. Id., ¶8.

The reporting inmate also said that defendant believed President Trump would be difficult to access due to security, but believed J.S. would be easier to target because, according to defendant, he had a prior relationship with J.S.'s family members and knew where their properties were located. Id., ¶7. This statement is corroborated by other evidence in the investigation. Defendant believed that a successful attack on J.S. would inspire others to attack President Trump.

Finally, according to the reporting inmate, defendant relayed that he learned from his attorney that someone was "ratting" on him for the threats he had made. The reporting inmate said that defendant was very upset after learning this information. Id., ¶9. The reporting inmate told agents that he/she also reported the information to a third party during a phone call he/she placed while in the MDC-LA. The reporting inmate advised that call records may

corroborate this fact. The government has since obtained these call records, and these call records do corroborate the reporting inmate's account.

The reporting inmate further stated that he had asked to speak with Bureau of Prisons Special Investigative Services (SIS) and was later interviewed by SIS Officer Roland Sipos. The reporting inmate stated that Officer Sipos subsequently notified the FBI regarding the information.

The reporting inmate also stated that defendant discussed leaving the country after his release from custody. The reporting inmate expressed concern that defendant might act on his statements if he were released on bond, which is why he reported defendant's statements to multiple sources.

**2. Defendant's Continued Harassment After His Home was Searched**

The government presented evidence at both of defendant's detention hearings that defendant, through an Instagram account, "jazzisdead11," had continued to harass the victims identified in the indictment as late as August 2026. At the hearing before Judge Hsu, defendant's counsel suggested that defendant had not engaged in harassing conduct since his home was searched by Federal agents on May 20, 2026. At the time of the September 15, 2026 hearing, the government had not yet confirmed from META (Instagram's parent company) that this account was associated with defendant.

Today, the government received returns from META confirming that the "jazzisdead11" Instagram account that had sent harassing messages to the victims was associated with the telephone number subscribed to by defendant. See Exhibit B.

**B. Defendant Should Remain Detained**

Defendant should be detained pending trial. He presents a grave danger to the community, and his desire to kill the President and harm J.S. and members of J.S.'s family appears to have escalated since his incarceration.

As the government explained at defendant's initial detention hearing, (Dkt. No. 11), and defendant's subsequent detention reconsideration hearing before this Court, (Dkt. No. 20), defendant has threatened to kill the President of the United States more than once. Defendant himself characterized his prior statements on social media as him having been "vocal in calling for the execution of Donald Trump." Now, even <u>after</u> his indictment and detention, defendant has announced within MDC-LA that once he is released from detention, he will carry out, or inspire others to carry out, Molotov cocktail attacks against the President and the President's former personal attorney, and has indicated that he will burn down the home of that attorney. And he has continued to harass the victims through a new social media account.

Beyond publicly calling for the execution of the President. defendant has printed and sold from his website ephemera stating, "Kill Trump." <u>See</u> <u>United States v. Lincoln</u>, 403 F.3d 703, 707 (9th Cir. 2005)("'wanted' posters [] publicly posted on the internet [] could be reasonably interpreted as a signal to unknown third parties to target those who appeared on the posters."); <u>Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists</u>, 290 F.3d 1058, 1071 (9th Cir. 2002)(<u>en banc</u>)).

//

//

As the Indictment alleges, defendant threatened J.S.'s family members by leading them to believe that he was lying in wait, outside the family's business, and causing them to fear for their safety. Defendant verbally assaulted these same family members with anonymous, threatening telephone calls, because, he admitted, he wanted them to feel "fear."

And now, defendant's statements while incarcerated demonstrate that that his desire to carry out this campaign of fear and violence has escalated since his indictment. This conduct amounts to clear and convincing evidence that defendant is a danger to the community and should remain detained. The Bail Reform Act of 1984 requires "detention of the person before trial" without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985) (detention is appropriate where a defendant is either a flight risk or a danger to the community; it is not necessary to prove both.); see also United States v. Watson, 2025 WL 1793841, at *1 (9th Cir. Feb. 19, 2025) (affirming a district court detention order based solely upon the finding that the defendant presented a danger to the community). Detention is warranted because no set of bond conditions would prevent defendant from continuing this campaign of fear and harassment from home. The typical prophylactic measures employed before trial -- e.g., home detention, an unsecured appearance bond, and ankle monitoring -- would not ameliorate these risks. Indeed, as the Indictment depicts, defendant mounted his initial campaign while sitting at home on his computer, and continued it at MDC-LA. Given

the relentless nature of defendant's conduct, an appearance bond would not adequately deter future criminal conduct. See Rep. No. 225, 98th Congress, 1st Sess. 1983, 1984 U.S.C.A.N. 3182, 3198-99 (n.60) (Congress finding that "a defendant who is a danger to the community remains dangerous even if he has posted a substantial money bond").

## III. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court order defendant detained pending trial.

DATED: September 18, 2026

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney & Chief, Criminal Division

/s/
WILLIAM KANELLIS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA